[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The respondent's previous employer, the law firm of Perkins Mario, filed a grievance with the petitioning Statewide Grievance Committee as a result of a dispute over fees it claims that the respondent withheld from it following the termination of his employment. As a result of that grievance, the petitioner filed the instant presentment in which it alleges that the respondent violated Rule 8.4(3) of the Rules of Professional Conduct.[1]
Many of the significant facts are not in dispute. The respondent has been an attorney since 1976 and a member of the Connecticut Bar since 1987. He joined the firm of Perkins Mario as an associate in April of 1997, largely as the result of his personal friendship with a principal of the firm, Jonathan Perkins. The respondent's employment was based on the expectation that he would build a plaintiffs' employment practice for the firm, but when the firm concluded that he had not lived up to those expectations, it terminated him by the fall of that same year.
At the time of the termination, the respondent and the law firm entered into an agreement which included, inter alia, the provision that he would receive one-half of "such sums as the firm receives as income from Axeirod's clients. . . ." The agreement included a specific reference to Axelrod's major client, ETS Wire and Cable, a company one of whose principals was an uncle of the respondent's wife. At the time of the respondent's termination, EIS owed the firm approximately $40,000 for CT Page 13653 legal services. The agreement between the respondent and the firm was subsequently amended to allow the respondent to receive payments directly from BIS, half of which were to forwarded to the firm within two days of receipt.
The next several months were punctuated by many rather unpleasant communications. Some were between the respondent and EIS, as he attempted to collect the fees due the firm. Others were between the respondent and Perkins and especially the firm's other principal, Carter Mario, with whom the respondent clearly had not enjoyed the same close personal relationship that he had had with Perkins, as the firm tried to urge the respondent to obtain those payments. Then, during a meeting between respondent and Perkins in mid-April of 1998, Perkins learned that in February of that year, the respondent had settled the claim against BIS for $21,000, or fifty per cent of the total amount then owed. The respondent had neither received specific authority for this particular settlement from Perkins Mario, nor had he notified the firm of its consummation and of the receipt of the monies. He claims that there was an understanding, denied by both Perkins and Mario, that because of his financial difficulties, he was entitled to use any of the funds he collected on a temporary basis in order to help establish his new practice.
Following the revelation of the settlement with EIS, the firm negotiated a new arrangement with the respondent, the terms of which included the respondent's agreement to pay the firm the full amount of the monies received from EIS ($21,000) plus an additional $2,000 representing other monies owed to the firm, with monthly payments of $1,000 to be made beginning on July 16, 1998. Apparently concerned about implicit threats of further action against him by the firm, including the possibility of the firm's filing a grievance against him, the respondent quickly prepaid $16,000 of the amount due. The two principals of Perkins Mario apparently disagreed over whether a grievance should be filed, with Perkins trying to `hold off' Mario from filing a grievance. It was Mario who eventually filed the grievance which has led to the instant presentment.
Much of the argument in this case has focused on the question of whether the respondent had the authority to compromise the BIS bill as he did. The written agreements between the respondent and the firm neither specifically grant nor withhold such authority. The court concludes that by implication, the respondent had authority to negotiate a compromise, but the court also concludes that the petitioner has proved by clear and convincing evidence that he did not have authority to consummate an agreement that bound the firm to its terms without its prior consent. More significantly, he certainly did not have the authority to utilize CT Page 13654 the proceeds of the settlement with EIS for his own purposes in violation of his agreement to forward any funds received to the firm within two days of their receipt by him. At a minimum, therefore, the respondent thereby engaged in conduct involving dishonesty and deceit in violation of Rule 8.4(3) of the Rules of Professional Conduct.
In light of the long personal relationship between the respondent and Perkins, on the one hand, and the vigorous oversight of the respondent's collection efforts vis-a-vis EIS by Mario, this court cannot conclude that the respondent ever intended to defraud the firm or to deprive the firm permanently of monies owed to it. It does, however, find totally unconvincing his claim that there was "an understanding" that he could continue to use on a temporary basis the funds received from EIS in order to establish his own practice while withholding from the firm not only the funds themselves but also the fact that he had received these funds. Feeling financially pressed himself, he decided to keep the news to himself and make use of the funds until he felt he could afford to pay them over to the firm. This conduct was dishonest and deceitful.
At various times throughout the hearing on this matter, the court expressed its concern over the fact that the direct or implied threat of the filing of a grievance may have been utilized by the firm, and particularly by Mario, as a vehicle for inducing the respondent to, in the first instance, redouble his efforts to obtain payment from EIS and thereafter, to induce him to accelerate his payments to the firm once the settlement with ELS had been revealed. Such conduct would arguably violate Rule 8.3(a) of the Rules of Professional Conduct, which provides that a "lawyer may not condition settlement of a civil dispute involving allegations of improprieties on the part of a lawyer on an agreement that the subject misconduct not be reported to the appropriate disciplinary authority." The court need not resolve the question of whether the firm and/or one or more of its principals actually engaged in such improper conduct, because such resolution would not affect the court's conclusion that the respondent violated Rule 8, 4(3). The question, however, of whether the law firm, or one of its principals, violated Rule 8.3(a) remains a serious question which the petitioning committee is invited to review.
The court, having concluded that the respondent's conduct violated Rule 8.4(3) of the Rules of Professional Conduct, orders the parties to return to court on October 25, 2001 at 2:00 P.M. for a hearing concerning the appropriate discipline to be imposed.
Jonathan E. Silbert, Judge